IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DEUTSCHE BANK TRUST COMPANY
AMERICAS

    Plaintiff,

                v.                      Civil No. 11-1344 (SEC)

DORAL FINANCIAL CORPORATION,
et al.

    Defendants.

**OPINION and ORDER**

Before the Court are defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Dockets # 22 and 41), and plaintiff's opposition thereto (Dockets # 29 and 47). After reviewing the filings and the applicable law, defendants' motion is **GRANTED** in part and **DENIED** in part.

**Background**

The present suit stems from the alleged mishandling of a $658,874 check (the "Check") and is premised on 12 C.F.R. § 229.32(c) as well as under Puerto Rico' Civil Code and Law of Negotiable Instruments. Plaintiff is Deutsche Bank Trust Company Americas ("Deutsche"), a New York chartered bank headquartered in Manhattan, New York. Docket # 16, ¶ 4. Defendants, on the other hand, are Doral Financial Corporation ("DFC") and its wholly owned subsidiary Doral Bank ("Doral") (collectively, "Defendants"), two Puerto Rico chartered banking enterprises. The events underlying Deutsche's claims, as averred in the complaint, follow.[1]

In November 2007, Deutsche received the Check for collection from a non-United

---

[1] Rather than setting forth individual allegations for each defendant, Deutsche refers to Defendants conjunctively by using the prepositions "and/or." The following quote from the complaint illustrates Deutsche's pleading strategy: "Plaintiff's counsel contacted . . . Doral Financial Corporation and/or Doral bank to follow up . . . ." Docket # 16, ¶ 35.

States customer. The Check was drawn on a Bank of America account, makers Nasser Ghazi and Erym Khan Ghazi, for payee Vista Real Estate, Ltd. Deutsche, who was the bank of first deposit, processed the Check and presented it to the Federal Reserve Bank for payment from Bank of America. The latter, however, refused payment on the Check due to insufficient funds in the Ghazi account. Things unraveled thereafter.

Upon returning the Check to the Federal Reserve, Bank of America mistakenly identified Defendants as the bank of first deposit, so the Federal Reserve sent the Check to them. Defendants then sat on the Check for several weeks. Thus, unaware of the issues with the Check, Deutsche incorrectly credited its customer's account for $658,874 on December 5, 2007.

On January 23, 2008, Defendants submitted a "Not Our Item" adjustment claim on the Check to the Federal Reserve. The claim, however, was denied because the 20-day deadline for its filing had expired. The same day, Defendants notified Deutsche about the Check and requested a reimbursement, alleging that their account had been incorrectly debited for the Check amount. Deutsche refused. Nevertheless, the Federal Reserve eventually reimbursed Defendants and, on February 21, 2008, debited Deutsche's account for $658,874.

Immediately, Deutsche began efforts with the Federal Reserve to obtain additional information regarding the Check and continued trying to resolve the dispute with Defendants. On May 5, 2008, the Federal Reserve sent a letter to Deutsche explaining the reasons behind the $658,874 debit and Defendants' actions in connection with it.[2]

---

[2] Deutsche refers to this information on paragraph No. 23 of the complaint. The actual letter was provided in Docket # 29-8. Although Defendants object, this practice is routinely allowed by the courts. See 5C Wright and Miller, Federal Practice and Procedure § 1364, n. 38 (3d ed. Rev. 2011). Moreover, in examining a motion to dismiss, courts may consider documents whose authenticity the parties do not dispute, official public records, documents central to plaintiff's claims, and documents sufficiently referred to in the complaint. Mississippi Public Employees' Retirement System v. Boston Scientific Corp., 523 F.3d 75, 86 (1st Cir. 2008). The

On July 25, 2008, Deutsche sent a letter to Defendants, claiming that they had negligently mishandled the Check and requesting a reimbursement.[3] Defendants nonetheless denied any wrongdoing, and a second collection letter followed on September 25, 2008. Still unable to collect the Check, Deutsche's counsel continued pressing Defendants for payment, contacting them in February, April, June, and July of 2009.[4] Defendants remained unyielding. So, on May 5, 2010, Deutsche informed them that it would file suit if payment was not forthcoming before May 20, 2010. Docket # 29-16.

On June 9, 2010, Deutsche made good on its word; it filed suit against Doral in New York's Supreme Court under the Uniform Commercial Code and New York's general tort statute. Docket # 1-9. That suit, however, ended on January 6, 2011 through a stipulation of dismissal without prejudice. Docket # 29-2. This case began three months later. Docket # 1.

As stated above, Deutsche's complaint is premised on both federal and state law. And, in pertinent part, it states that "had [Defendants] properly handled the Check as a Not Our Item when [they] received the same, the Check would have been properly researched and returned . . . in a timely manner [which] would have enabled Plaintiff to charge the Check to its Customer." Docket # 16, ¶ 21. After preliminary procedural nuances, Defendants moved to dismiss, claiming that Deutsche's complaint as drafted fails the pleading standards imposed in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Alternatively, Defendants also contend that all causes of action are time

---

Federal Reserve letter could be classified under any of those classes of documents.

[3] Deutsche also sought redress from Bank of America; a $175,000 settlement was eventually reached. Docket # 16, ¶ 37. Deutsche's complaint provides no information about the collection efforts made with the Ghazis or with Vista Real Estate, Ltd.

[4] Paragraph No. 38 of the complaint alludes to these communications, which Deutsche evinced with attachments to its opposition memoranda. See Docket # 16, ¶ 38 and Docket # 22. The discussion at note 2 above also applies to these communications.

barred. Id. Deutsche timely opposed each contention. Docket # 29.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[5] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiff's favor. Twombly, 550 U.S. 544. The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a

---

[5] "Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks omitted).

plausible entitlement to relief.'" Twombly, 550 U.S. at 559, *cited in* Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Iqbal, 556 U.S. 662, the Supreme Court reaffirmed *Twombly* and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id., at 1949. Specifically, the court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Twombly, 550 U.S. at 556. Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id., at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id., at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id., at 1950.

6

The aforementioned requirements complement a bedrock principle of the federal judicial system: a complaint must contain enough detail to give "a defendant fair notice of the claim and the grounds upon which it rests." Ocasio-Hernandez, 640 F.3d at 8 (citing Fed. R. Civ. P. 8(a)(2)). Accordingly, "[w]hile a plaintiff's claim to relief must be supported by sufficient factual allegations to be plausible under Twombly [and Iqbal], nothing requires a plaintiff to prove her case in the pleadings." Chao v. Ballista, 630 F.Supp. 2d 170, 177 (D.Mass. 2009). Put differently, even after Twombly and Iqbal, "[d]ismissal of a complaint under Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernandez, 640 F.3d at 11.

A different standard applies when dismissal is sought under Rule 12(b)(6) pursuant to a statute of limitations affirmative defense. Under this scenario, dismissal may be appropriate if "the facts that establish the defense . . . [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003); Jones v. Bock, 549 U.S. 199, 215 (2007). Thus, even though a complaint need not plead facts to avoid potential affirmative defenses, plaintiffs could plead themselves "out of court by alleging facts that are sufficient to establish the defense." Hollander v. Brown, 457 F.3d 688, 691 n. 1 (7th Cir. 2006).

**Applicable Law and Analysis**

*The Twombly and Iqbal Challenge*

In this case, Defendants argue that Deutsche's pleading strategy of using the prepositions "and/or" to refer interchangeably to Defendants, "without any reasoning or specificity for such amalgamation fails to meet the Twombly and Iqbal specificity standards." Docket # 22, p. 24. Deutsche's strategy, however, falls squarely within the contours of Fed. R. Civ. P. 20(a)(2)(A). Among other things, this rule allows the joinder of defendants if "any

right to relief is asserted against them . . . in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Id. Rule 20 comes into play, when, as here, "the substance of plaintiff's claim indicates that plaintiff is entitled to relief from someone, but the plaintiff does not know which of two or more defendants is liable under the circumstances set forth in the complaint." 7 Wright, Miller & Kane, Federal Practice and Procedure § 1654 (3d ed. 2011).

Defendants see matters differently. They believe that Twombly and Iqbal require Deutsche to plead the specific circumstances warranting the application of Rule 20. Docket # 22, pgs 7-9. According to Defendants, Twombly and Iqbal require Deutsche "to do more than just say that DFC and/or Doral wrong it; Deutsche must state in its pleadings that there are doubts as to which defendant is liable and give a factual and plausible underpinning for such doubts." Docket 41, ¶ 13. To support this contention, Defendants cite four cases, the two latest ones dating back to the 1970's, and the other two, to the 1940's. Id., ¶ 12. The first flaw in Defendants' argument is therefore obvious—their supporting case law was written several decades before the introduction of either Twombly or Iqbal and thus have nothing to do with the exigencies those cases imposed.

The second problem was described fitly in Koch v. I-Flow Corp., 715 F.Supp. 2d 297 (D.R.I. 2010). There, in denying a motion to dismiss in which defendants challenged the sufficiency of the complaint on the same grounds advanced in this case, the court remarked:

> Plaintiffs who plead against alternative defendants sometimes state and restate each claim repeatedly, each time naming an alternate defendant. To insist that this redundant format be followed would be to elevate technical form over substance, and would be contrary to the intent of the Federal Rules' liberal pleading requirements.

Id., at 302 n.2. Defendants' incantation of the Twombly and Iqbal standard would produce such an effect. And they have conceded the point by suggesting that the alleged defects in Deutsche's complaint may be cured by making the same allegations with regard to each defendant without the "and/or." See Docket # 22, at p. 9.

In any event, Defendants' argument misses the mark for yet a more pivotal reason. The relevant inquiry under Twombly and Iqbal is limited to whether the complaint affords each named defendant with proper notice of the actionable facts, regardless of the form in which those facts are presented. See Ocasio-Hernandez, 640 F.3d at 12-13. Deutsche's complaint easily satisfies this threshold. It contains specific factual allegations regarding (1) the mishandling of the Check; (2) the consequences of the mishandling; and (3) the parent-subsidiary relationship of Defendants. True, at this stage of the proceedings, Deutsche has long ways to go in order to prove its "and/or" allegations. But Defendants cannot claim to be in the dark as to the factual issues at stake in the case or as to the direction in which to aim discovery. Indeed, the vigorous motion practice Defendants have put forth at this stage evince the contrary; therefore, their motion to dismiss under Twombly and Iqbal is **DENIED**.

*Deutsche's Federal-Law Claim*

Deutsche premises its federal-law claims on 12 C.F.R. § 229.32(c). In pertinent part, § 229.32(c) provides:

> If a bank receives a returned check . . . on the basis that it is the depository bank, and the bank determines that it is not the depository bank . . . it shall either promptly send the returned check . . . to the depository bank . . . or send the check . . . back to the bank from which it was received.

Id. Violations of these requirements are actionable under § 229.38, which states that "a bank that fails to exercise ordinary care or act in good faith under this subpart may be liable to the depository bank." 12 C.F.R. § 229.38; see also, Bank One, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 268 (1996) ("Section 229.38 states standards governing interbank liability. It instruct banks to exercise ordinary care and act in good faith in complying with the requirements of Subpart C [of Tile 12 of the C.F.R.] . . . ."). The exposure created under these sections is not eternal, however. Violations shall be brought forth "in any court of competent jurisdiction . . . *within one year after the date of the occurrence of the violation involved.*" § 229.38(g) (emphasis added).

Defendants' motion to dismiss underscores the one-year statute of limitation just described, and Deutsche's opposition memoranda is silent about it. Such silence is dispositive here, especially because (1) Deutsche's compliant unequivocally establishes that the actionable occurrence happened well over three years ago; and (2) § 229.38(g) has no tolling provision. See Vogel v. Linde, 23 F.3d 78, 80 (4th Cir. 1994) ("The black-letter rule . . . is that a statute of limitations runs against all persons unless the statute expressly provides otherwise."). Further, well-settled law establishes that when federal law "explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter." Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946). For these reasons, Defendants' motion to dismiss Deutsche's federal-law claim is **GRANTED**.

*Deutsche's State-Law Claims*

Deutsche's first state-law claim is premised on § 3-202 of Puerto Rico's Law of Negotiable Instruments, which, in pertinent part, requires collecting banks to "exercise ordinary care in . . . sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferor after learning that the item has not been paid or accepted." P.R. Laws Ann. tit. 19, § 852. An action under this section must be commenced within three years of its accrual. Id. § 811. The Court's analysis must therefore begin by determining when Deutsche's claim under § 3-202 accrued. The statute, however, provides no guidelines to conduct this inquiry, and the Court is aware of no case law establishing the same.

Without recognizing this issue, the parties invite the Court to rely on Article 1873 of the Puerto Rico Civil Code, which applies in general tort cases and provides that a cause of action accrues when the aggrieved has constructive notice of both the grievance and its perpetrator. P.R. Laws Ann. tit. 31, § 5298; see also Colon-Prieto v. Geigel, 15 P.R. Offic. Trans. 313 (1984). Nevertheless, the correct standard to use in this case lies elsewhere. Article 1869 of Puerto Rico's Civil Code provides that "[t]he time for the prescription of all kinds of actions, *when there is no special provision to the contrary*, shall be counted from

the day on which they could have been instituted." P.R. Law. Ann. tit. 31, § 5299 (emphasis added).

The application of Article 1869 requires a fact intensive case by case inquiry. Of course, at the motion to dismiss stage, the inquiry revolves around the allegations in plaintiff's complaint. In this case, Deutsche alleges, among other things, that Defendants wrote a letter on January 24, 2008 in connection with the Check and that the Federal Reserve debited $658,874 from its account a month later. Defendants thus contend that Deutsche "knew or should have known that something was afoot with the Check since Doral contacted it on January 24, 2008 or since the Federal Reserve charged back its accounts for the face value of the Check [on February 21, 2008]. Docket # 41, p. 10. Defendants argument may be correct. But to file suit under § 3-202, Deutsche needed more than simply knowing that something was "afoot." It needed to know that Defendants' had proceeded without ordinary care when handling the Check. P.R. Laws Ann. tit. 19, § 852. And Deutsche contends that "it was not until May 5, 2008, that a communication from the Federal Reserve informed [it] of how [the Check] had been mishandled, thus providing Deutsche . . . with the information that was necessary to assess what had happened." Docket # 47, p. 7. The record before the Court supports Deutsche's position.

Based on the foregoing discussion, May 5, 2011 marked the three year anniversary of the date of accrual for Deutsche's § 3-202 cause of action. Deutsche filed its complaint on April 15, 2011. Therefore, Defendants' motion to dismiss Deutsche's § 3-202 lacks merit, and it is **DENIED**.[6]

Defendants also raise a statute of limitation challenge on Deutsche's second state-law claim. Docket # 22, p. 13. This claim is premised on Puerto Rico's general tort statute, P.R. Laws Ann. tit. 31, § 5141, which, as stated above, has a one year statute of limitations,

---

[6] If proper, Defendants may reassert their § 3-202 arguments at the summary judgment stage, with the corresponding evidentiary support.

counted from the date in which the injured acquires constructive knowledge of both the harm and the likely identity of the tortfeasor. Tolling this limitation period is possible in one of three ways: (1) by the filing of a judicial claim; (2) by an extrajudicial claim; and (3) by an act of acknowledgment of the debt by the debtor. P.R. Laws Ann. tit. 31 § 5303. Moreover, "once the statute of limitations is tolled on an action, the one year period is reset and begins to run again from the beginning." Ramos v. Roman, 83 F.Supp. 2d 233, 241 (D.P.R. 2000).

On this point, the parties quarrel over whether their extrajudicial interactions tolled the one year statute of limitations. Puerto Rico law imposes no formal requirements on extrajudicial tolling, permitting both written and verbal tolling. Galib Frangie v. El Vocero de Puerto Rico, 138 P.R. Dec. 560, 568 (1995). In fact, courts in this jurisdiction favor a liberal approach to extrajudicial tolling, with the conservation of rights been regarded as the norm. See e.g., Kery v. American Airlines, Inc., 931 F. Supp. 947, 952 (D.P.R. 1995) (quoting Galib Frangie, 138 P.R. Dec. at 567)). This being said, to be effective for tolling purposes, an extrajudicial claim must be an "unmistakable manifestation of one, who threatened with the loss of his right, expresses his wish not to lose it." Vargas-Ruiz v. Golden Arch Dev., Inc., 283 F.Supp. 2d 450, 456 (D.P.R. 2003). An extrajudicial claim must therefore "do something more than merely inform or remind . . . ." Galib Frangie, 138 P.R. Dec. at 569.

Defendants position is that Deutsche's extrajudicial communications "should be disregarded as mere follow-ups or reminders that lack specificity requirements and that do not serve to toll the period of limitations under Puerto Rico law." Opposing, Deutsche points the Court to letters and emails exchanged with Doral before the filing of this suit. Dockets # 1 and 29. Deutsche sent the first of these communications in July 2008 (Docket # 1-5), many other followed thereafter, including email exchanges in June 2009 (Docket # 29-14) as well as another letter in May 2010 (Docket 29-16).

Among other things, the communication Deutsche sent in July 2008 stated that "Doral Bank's handling of the [C]heck upon its receipt from [Bank of America] was improper and

deficient in several respects . . . . Deutsche . . . hereby demands immediate payment of the $658, 874 debited to Deutsche['s] . . . account with the Federal Reserve . . . in connection with the [C]heck." Docket 1-5. The June 2009 communication, sent from Deutsche's outside counsel to Doral's outside counsel, conveyed the following message: "I wanted to follow up yet again. We are working hard to resolve this and thought we would have an answer from Doral Bank by now. Please let me know what is happening." Docket 29-14. The next day Doral's counsel retorted:

> Doral continues to believe that its fulfilled its obligations with regard to the mis-directed check and certainly denies any liability . . . . Doral would in the context of a complete settlement and release, be prepared to contribute an amount reflecting its wish to avoid paying fees and costs associated with having to contest a claim.

Id. The May 2010 communication reads as follows: "As you may recall, we reached out to you in an unsuccessful effort to resolve [Deutsche's] claims against Doral. As a courtesy, I am attaching a complaint in the above-referenced matter. I have been asked to file the action if we do not receive payment by May 20, 2010." Docket # 29-16.

Clearly, the foregoing communications are much more than the "follow-ups" or "reminders" that Defendants paint them to be. They conveyed, unequivocally, the right Deutsche sought to vindicate as well as the relief desired from Doral. The response Doral sent in June 2009 denying liability and offering a settlement confirms this point. Accordingly, each of the communications restarted Article 1802's one year limitation period, with the May 2010 letter keeping Deutsche's claim alive until at least May 2011. Deutsche filed this suit well before May 2011; therefore, on this alone, Defendants' contentions fail.

There is more, however. As stated above, in June 2010, Deutsche filed suit against Doral in New York. That suit, which tolled Article 1802's statute of limitations while pending, see Rodriguez v. Suzuki Motor, Corp., 570 F.3d 402, 407 (1st Cir. 2009), was dismissed without prejudice in January 2011. Upon dismissal, a new one-year limitation period began, January 2012 being its expiration date. Id. Deutsche's April 2011 suit came

almost a year before that date. Accordingly, Deutsche's cause of action against Doral under Article 1802 is very much alive, and Defendants motion to dismiss is **DENIED** on this front.

Matters are different in connection with Deutsche's Article 1802 claim against DFC. None of the communications described above, nor any of the ones Deutsche alludes to in its complaint and opposition memoranda, were addressed to DFC. Neither did Deutsche's complaint in New York include DFC as a party. Therefore, Deutsche cannot rest on these events to withstand Defendants' statute of limitation contentions as to DFC.

Deutsche refers to a so-called identity of interest doctrine as well as to a "share attorney method" in an attempt to overcome this shortcoming. Docket # 29, pgs. 21-22. Specifically, Deutsche argues that because Doral and DFC behave as a single unit and share the same legal representation, "DFC has been on notice of [Deutsche's] claims since the very beginning," even though all communications were sent exclusively to Doral. Id. Deutsche's argument, however, runs contrary to the well-settled principle that an extrajudicial claim only tolls Article 1802's statute of limitations if it is "addressed to the debtor or passive subject of the right, not to a third party . . . ." Rodriguez-Narvaez v. Nazario, 895 F.2d 38, 44 (1st Cir. 1990) (citing Velilla v. Pueblo Supermarkets, Inc. 11 P.R. Offic. Trans. 904 (1981)). Defendant's motion to dismiss Deutsche's Article 1802 claim against DFC is therefore **GRANTED**.

Deutsche's last state-law claim is premised on § 1-203 of Puerto Rico's Law of Negotiable Instruments. P.R. Laws Ann. tit. 19, § 453. Defendants contend that Deutsche's action under this section is time barred but fail to point the Court into the applicable statute of limitations. Docket # 22, pgs. 22-24. Deutsche, on the other hand, argues that the statute lacks a limitation period, and thus, that it is governed by P.R. Laws Ann. tit. 31, § 5294, which states that civil actions with no specifically applicable statute of limitations term must be commenced within a period of 15 years. The Court concurs with Deutsche.

April 15, 2011, the filing date of this suit, fell within the 15-year mark by more than 11 years. Therefore, Defendants' motion to dismiss this cause of action is **DENIED**.

14

**Conclusion**

For the foregoing reasons, Deutsche's federal law claims are **DISMISSED** with prejudice. Deutsche's Article 1802 claim against DFC is also **DISMISSED** with prejudice. Defendants' motion to dismiss is **DENIED** as to Deutsche's remaining claims.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of January, 2012.

                                              s/ *Salvador E. Casellas*
                                              SALVADOR E. CASELLAS
                                              U.S. Senior District Judge